## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **CHRISTOPHER CUMMINS**, *on behalf of himself and all others similarly situated,* | ) ) ) ) | Case No. 3:23-cv-277 |
| | ) | Judge |
| Named Plaintiff, | ) ) | Magistrate Judge |
| v. | ) ) | |
| | ) | **JURY DEMAND** |
| **MIDMARK CORPORATION** | ) | **ENDORSED HEREON** |
| C/O Statutory Agent | ) | |
| CT Corporation System | ) | |
| 4400 Easton Commons Way, Suite 125 | ) | |
| Columbus, Ohio 43219, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Now comes Named Plaintiff Christopher Cummins ("Cummins" or "Named Plaintiff"), by and through undersigned counsel, *individually and on behalf of all others similarly situated*, for his Collective and Class Action Complaint against Defendant Midmark Corporation ("Midmark" or "Defendant") for Defendant's willful failure to pay Named Plaintiff and other similarly situated employees overtime wages as well as failure to comply with all other requirements of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.03 ("the Ohio Wage Act" or "OWMA"), and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), and states and alleges as follows:

## SUMMARY OF COMPLAINT

1.      The FLSA is a broadly remedial and humanitarian statute designed to correct "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc*., 450 U.S. 728, 739 (1981). The FLSA required Defendant to pay all non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours each workweek. 29 U.S.C. § 207. Ohio statutory law further required the payment of overtime compensation and/or contained other compensation requirements. *See* O.R.C. §§ 4111.03(A), 4113.15.

2.     Cummins brings this collective and class action Complaint to challenge the policies and practices of Defendant that violate the FLSA, 29 U.S.C. §§ 201-219, as well as the laws of the State of Ohio, to recover unpaid wages and other damages from Defendant.

3.     Cummins brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" (the "FLSA Collective" as defined below).

4.     Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert factually-related claims under the laws of the State of Ohio (the "Ohio Class" as defined below).

5.     Plaintiff and other members of the FLSA Collective and Ohio Class ("Putative Class" or "Putative Class Members") now seek to exercise their rights to unlawfully unpaid overtime wages and additional statutory liquidated damages in this matter, other penalties, in addition to prejudgment and post-judgment interest, costs and attorneys' fees incurred in prosecuting this action, the employer's share of relevant taxes, and such further relief as the Court

deems equitable and just as a result of at least three (3) of Defendant's companywide pay policies/practices as more fully described below.

## I.     JURISDICTION AND VENUE

6.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

7.     This Court also has supplemental jurisdiction over the state-law claims because these claims arise from a common nucleus of operative facts. *See* 29 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendant and any Putative Class Member who worked outside of the State of Ohio because Defendant conducted substantial business in this jurisdiction and Defendant's corporate headquarters is located at 10170 Penny Lane, Suite 300, Miamisburg, Ohio, 45342, which is in this judicial district and division.

9.     Venue is proper in this Court because Defendant's corporate headquarters is located in this judicial district and division. *See* 28 U.S.C. § 1391(b)-(d).

## II.    THE PARTIES

### A.  Named Plaintiff Cummins

10.     Cummins worked for Defendant from approximately September, 2013 until March 15, 2023 in various hourly, non-exempt positions at one of its manufacturing facilities located at 260 Depot St., Leesburg, Ohio 45135.

11.     During the three years preceding this Complaint, Cummins worked as a manufacturing employee in the position of welder.

12.     Cummin's Consent to Join Form is filed herewith, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**.

### B.  Midmark Corporation

13. Defendant is an Ohio for-profit corporation and may be served with process by serving its registered agent:  CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

14. As more fully alleged below, Defendant operates several manufacturing facilities across the continental United States.

### III.  FACTS

15. Cummins worked for Defendant from approximately September, 2013 until March 15, 2023 in various hourly, non-exempt positions at one of its manufacturing facilities located at 260 Depot St., Leesburg, Ohio 45135.

16. During the three years preceding this Complaint, Cummins worked as a manufacturing employee in the position of welder.

17. As a welder, Cummins primarily performed non-exempt job duties such as assembling pieces of metal together, repairing metal products by heating them with welding tools, inspecting materials or structures requiring welding and monitoring processes while staying aware of overheating levels during each shift.

18. Throughout his employment, Defendant classified him and other manufacturing employees, including, but not limited to, in the positions of welder, machine operators, and assemblers, as non-exempt.

19. Throughout his employment, Midmark paid him and other hourly, non-exempt manufacturing employees on an hourly basis, defined their workweek as Monday through Sunday, and paid them on a weekly basis.

20. At all times relevant, Named Plaintiff and other members of the FLSA Collective and Ohio Class were hourly, non-exempt employees entitled to overtime compensation at the rate

of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207; O.R.C. § 4111.03.

21.     Named Plaintiff and other members of the Putative Class worked overtime hours during one or more workweeks during their employments with Defendant.

22.     Like the Putative Class Members (as defined below), Cummins regularly worked more than forty (40) hours in a workweek, Defendant was aware that they worked overtime, but Defendant did not fully and properly pay him and the Putative Class Members in accordance with the minimum requirements of the FLSA and Ohio law for all of their compensable hours worked due to its companywide policies/practices in at least three (3) ways described below.

**(Unpaid Overtime Due to Defendant's Pay-to-Shift Policy)**

23.     Named Plaintiff and similarly situated manufacturing employees arrive at work prior to the scheduled start of their shifts.

24.     After arriving at the manufacturing facility, Defendant applies a company-wide policy whereby it requires its manufacturing employees to clock in/out[1] each day with a badge containing each employee's personal identification number to keep track of their work hours.

25.     Once clocked in, but prior to the scheduled "start" of their shift, Named Plaintiff and similarly situated employees regularly perform integral and indispensable unpaid work, including walking to their locker rooms where they were required to retrieve and don welding gloves and a helmet, gather all necessary tools and equipment such as cutters, adjustable wrenches, parts for the tips of the welder, among other tools.

26.     After donning personal protective equipment and gathering necessary tools and equipment, Named Plaintiff and manufacturing employees walked to their respective supervisor's

---

[1] For all intents and purposes, the terms "punch in" and "clock in" are used interchangeably and have the same meaning herein. In addition, the terms "punch out" and "clock out" also are used interchangeably and have the same meaning.

desks to retrieve work slips for their shifts, walked to their work areas, and engage in a pass-down meeting with the previous shift's employee whom they were relieving.

27.     During this meeting, the hourly production employees being relieved would relay any necessary information about what had occurred during the previous shift, go over any issues, and/or what needed to be accomplished during the incoming shift.

28.     After completing the above tasks, Named Plaintiff and other manufacturing employees performed their manufacturing job duties for their shift.

29.     All of this work is captured on Defendant's companywide timekeeping system.

30.     Despite utilizing a company-wide timekeeping system that tracks exactly when each hourly employee "punches" or clocks in/out each day, Defendant maintains a policy and/or practice whereby it generally only compensates its employees for their *scheduled shifts* (or rounds to their scheduled shifts) ("Pay-to-Shift Policy") rather than paying them for all of the time it suffered or permitted its employees to work for its benefit.

31.     The pre-shift job duties resulted in Named Plaintiff and other similarly situated manufacturing employees performing integral and indispensable work for over ten (10) minutes each day prior to the scheduled start of their shifts.

32.     Despite Defendant knowing that its employees were clocked in and performing work that was integral and indispensable to their job duties before the scheduled start of their shifts, Defendant did not pay Named Plaintiff and other similarly situated manufacturing employees for their pre-shift work.

33.     Thus, during all times relevant, Defendant failed to pay Named Plaintiff and other similarly situated hourly manufacturing employees for all overtime work performed because of its policy or practice of not paying employees for pre-shift work.

34. At all times relevant, Defendant was aware that Named Plaintiff and other members of the Putative Class performed integral and indispensable work as alleged above because it trained and instructed them to perform such work, observed them performing this work, and they could be subject to discipline if they did not perform such work, but Defendant failed to compensate them for this work nevertheless.

35. Defendant's Pay-to-Shift Policy violates the FLSA and Ohio Acts because it failed to compensate Named Plaintiff for all time he and other members of the Putative Class actually worked for Defendant's benefit.

36. This integral and indispensable unpaid work performed by Named Plaintiff was practically ascertainable to Defendant.

37. There was no practical administrative difficulty of recording/paying this integral and indispensable unpaid work performed by Named Plaintiff and the Putative Class.

38. The unpaid work performed by Named Plaintiff constituted part of his principal activities, was required by Defendant, and was performed for Defendant's benefit.

39. Moreover, the unpaid work was an integral and indispensable part of other principal activities performed by Named Plaintiff and was part of his continuous workday.

**(Unpaid Overtime Due to Defendant's Unpaid Meal Break Policy)**

40. Defendant applied a companywide policy of deducting thirty (30) minutes from (or not paying) Named Plaintiff and the Putative Class Members' compensable hours each day for so-called "meal breaks" ("Unpaid Meal Break Policy").

41. Cummins and the Putative Class Members are thus not paid for that time.

42. However, Defendant failed to provide Cummins and the Putative Class Members with *bona fide* meal breaks.

43.     Instead, Defendant requires Cummins and the Putative Class Members to take off various forms of personal protective equipment such as safety glasses, gloves, rush to the break room, and subsequently hurry back to their work areas, put their with their personal protective equipment back on in order to be back up and running prior to the 30-minute shortened "meal break." By subjecting Cummins and the Putative Class Members to either requiring them to work through their meal break, take a shortened meal break, and/or otherwise not allowing them to take a fully uninterrupted meal break, they were not *bona fide* meal breaks.

44.     Defendant's Unpaid Meal Break Policy violates the FLSA and the Ohio Acts by depriving Cummins and the Putative Class Members of wages, including overtime pay, for all overtime hours during workweeks when they worked forty (40) or more hours during one or more workweeks.

45.     Defendant had actual or constructive knowledge that Named Plaintiff's and Putative Class Members' meal breaks were either missed, shortened, and/or otherwise interrupted by job duties.

46.     Named Plaintiff and Putative Class Members were not permitted to report the missed/interrupted meal breaks and there was no established policy or practice of being reimbursed for such time.

47.     Rather, Defendant instructed Named Plaintiff and other members of the Putative Class to "use it or lose it" although the meal breaks were not *bona fide* meal breaks.

48.     As a result of Defendant's policy and/or practice to require a 30-minute meal break deduction from Named Plaintiff's and Putative Class Members' compensable hours worked for meal breaks that were not taken at all or that were interrupted by work duties, Defendant had actual or constructive knowledge that they were not compensating them for all hours worked.

**(Unpaid Overtime Due to Failure to Pay at Correct Regular Rate of Pay)**

49.     Third, during their employment with Defendant, Named Plaintiff and the Putative Class Members were not fully and properly paid for all of their compensable overtime hours worked because Defendant did not properly calculate their regular rates of pay for the purposes of meeting the minimum requirements set forth in the FLSA and the Ohio Acts, which resulted in unpaid overtime wages. Defendant did not properly calculate overtime based on Named Plaintiff's and other members of the Putative Class Members' ***regular rate of pay***, as defined by the FLSA and as required by the Ohio Acts, but instead calculated overtime compensation based on Named Plaintiff's and other members of the Putative Class's hourly rates of pay, resulting in unpaid overtime compensation.

50.     Defendant paid Named Plaintiff and the Putative Class Members a Base Hourly Wage as well as one or more additional forms of nondiscretionary remuneration that should have been included in the calculation of employees' regular rates of pay for overtime compensation calculation purposes, including but not limited to shift premiums for working certain shifts, production bonuses, and other forms of compensation which were based on objective, predetermined, and measurable criteria, induced workers to work more efficiently or productively or at undesirable hours, incentivized or encouraged Named Plaintiff and similarly situated workers to work more steadily, rapidly and/or efficiently, and/or incentivized or encouraged its workers to remain with the company given its importance to the overall operation of Defendant's business. *See* 29 C.F.R §§ 778.207(b), 778.211(c). *See also* U.S. Department of Labor Fact Sheet # 56C: Bonuses under the Fair Labor Standards Act (FLSA).[2]

---

[2] https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses (last accessed September 22, 2023).

51. Defendant informed Named Plaintiff and other members of the Putative Class of the additional non-discretionary Additional Remuneration, upon hiring or otherwise during their employments. Named Plaintiff and other members of the Putative Class expected to receive the Additional Remuneration and did in fact receive the Additional Remuneration.

52. During the last three years preceding the filing of this Complaint, Named Plaintiff and other members of the Putative Class received or earned their Base Hourly Wage in addition to the Additional Remuneration as described above in one or more workweeks when they work overtime hours, more than forty (40) hours in a single workweek.

53. However, Defendant failed to include the Additional Remuneration in calculating Cummins' and the Putative Class Members' regular rates of pay for overtime purposes during workweeks when he and the Putative Class Members worked overtime in one or more workweeks.

54. As a result of the Pay-to-Shift Policy, Unpaid Meal Break Policy, and/or the Additional Remuneration Policy alleged above, Defendant's failure to compensate Named Plaintiff and similarly situated members of the Putative Class for hours worked more than forty (40) hours per week at "one and one-half times" the employee's "regular rate[s]" of pay constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio Acts, O.R.C. §§ 4111.03(A), 4113.15.

55. Defendant knew that Named Plaintiff and other members of the Putative Class were entitled to overtime compensation under federal and Ohio or acted in reckless disregard for whether they were so entitled.

56. Defendant intentionally, knowingly, and willfully circumvented the requirements of the FLSA and the Ohio Acts.

57.     The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201-219; O.R.C. §§ 4111.03, 4113.15; and resulted in the unlawful deprivation of wages of Defendant to the detriment of Defendant's employees, including Named Plaintiff and other members of the Putative Class.

**(Defendant's Business, Defendant's Status as an Employer, and Defendant's Status as an Enterprise)**

58.     Midmark manufactures healthcare products, equipment, and diagnostic software for medical, veterinary, and dental markets across the continental United States and also supplies such products globally.

59.     While it is headquartered at its 10170 Penny Lane, Suite 300, Miamisburg, Ohio 45342, it operates several manufacturing facilities, including the facility where Named Plaintiff and the Putative Class worked, across the United States in Ohio, Illinois, Florida, Michigan, Missouri, Kentucky, and California.[3]

60.     At all times relevant, Midmark was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

61.     At all times relevant, Midmark was an enterprise within the meaning of 29 U.S.C. § 203(r). That is, Midmark performs related activities through unified operations and common control for a common business purpose; named, the operation of "Midmark" facilities throughout the United States.

62.     Each facility is engaged in related activities, i.e. all activities which are necessary to the operation and maintenance of Midmark manufacturing facilities.

---

[3] *See* https://www.midmark.com/about-us/our-locations#domestic (last accessed Sep. 21, 2023).

63. Each facility has common management, ownership, and related interests across all Midmark manufacturing facilities.

64. Midmark retains the ultimate authority over operational control over significant aspects of the day-to-day functions of each Midmark manufacturing facility, including supervising, and controlling schedules, and conditions of employment of Cummins and the Putative Class Members.

65. Each manufacturing facility provides the same or similar array of products.

66. At all times relevant, Midmark had direct or indirect control and authority of Named Plaintiff's and the Putative Class Members' working conditions, including matters governing the essential terms and conditions of their employment.

67. At all times relevant, Midmark exercised authority and control over Named Plaintiff and the Putative Class Members across all Midmark manufacturing facilities.

68. At all times relevant, Midmark had the authority to (and do) hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain employee records across all Midmark manufacturing facilities.

69. At all times relevant, Midmark was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Midmark has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, such as medical, dental, and veterinary products, personal protective equipment, computers, and cell phones.

70.     At all relevant times, Midmark has had an annual gross volume of sales made, or business done, of not less than $500,000 each of last three (3) years preceding the original Complaint.

71.     As alleged above, Midmark applied its Pay-to-Shift Policy, Unpaid Meal Break Policy, and Additional Remuneration Policy uniformly to its hourly manufacturing employees across all of its facilities in the continental United States.

**A.      FLSA Collective Action for Unpaid Overtime Wages**

72.     Named Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct as described herein.

73.     As outlined above, the FLSA Collective that Named Plaintiff seeks to represent as members of the FLSA Collective and to whom Named Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, of which Named Plaintiff himself is a member, is composed of and defined as follows:

> All hourly, non-exempt Midmark manufacturing employees who were paid according to Defendant's Pay-to-Shift Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Pay-to-Shift Collective" or "FLSA Pay-to-Shift Collective Members");
>
> All hourly, non-exempt Midmark manufacturing employees who were subject to Defendant's Unpaid Meal Break Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Unpaid Meal Break Collective" or "FLSA Unpaid Meal Break Collective Members"); and
>
> All hourly, non-exempt Midmark manufacturing employees who were paid according to Defendant's Additional Remuneration Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Additional Remuneration Collective" or "FLSA Additional Remuneration Collective Members").

74. The FLSA Pay-to-Shift Collective Members, FLSA Unpaid Meal Break Collective Members, and FLSA Additional Remuneration Collective Members are collectively referred to as the "FLSA Collective Members" or "FLSA Collective."

75. This action is maintainable as an "opt-in" collective action pursuant to the FLSA as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs. In addition to Named Plaintiff, numerous current and former hourly manufacturing employees are similarly situated with regard to their wages and claims for unpaid wages and damages. Named Plaintiff is representative of those other employees and is acting on behalf of their interests, as well as his own, in bringing this action.

76. Examples of other members of the FLSA Collectives are those who performed worked at any of its manufacturing facilities in the continental United States, such as welders, machine operators, and assemblers, among others to be identified in discovery.

77. Maintaining this case as a collective action and issuing Notice to the FLSA Collective pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

78. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's business and payroll records that they were required to maintain pursuant to the FLSA. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. §216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

79. Named Plaintiff cannot yet state the exact number of similarly situated persons but avers, upon information and belief, that the FLSA Collectives consists of several hundred or more

persons. Such persons are readily identifiable through the payroll records Defendant has maintained, and were required to maintain, pursuant to the FLSA.

**B.      Federal Rule of Civil Procedure 23 Class Action for Unpaid Overtime Wages**

80.      Named Plaintiff brings his Ohio Acts claims under Federal Rule of Civil Procedure 23 as a class action on behalf of himself and all other members of the Ohio Class Members, defined as:

> All hourly, non-exempt Midmark manufacturing employees who were paid according to Defendant's Pay-to-Shift Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Pay-to-Shift Class" or "Ohio Pay-to-Shift Class Members");
>
> All hourly, non-exempt Midmark manufacturing employees who were subject to Defendant's Unpaid Meal Break Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Unpaid Meal Break Class" or "Ohio Unpaid Meal Break Class Members"); and
>
> All hourly, non-exempt Midmark manufacturing employees who were paid according to Defendant's Additional Remuneration Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Additional Remuneration Class" or "Ohio Additional Remuneration Class Members").

81.      As alleged above, the Ohio Pay-to-Shift Class, Ohio Unpaid Meal Break Class, and the Ohio Additional Remuneration Class re collectively referred to as the "Ohio Class" or "Ohio Class Members."

82.      The Ohio Class, as defined above, is so numerous that joinder of all members is impracticable. Named Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of several hundred or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendant maintained, and were required to maintain, pursuant to the FLSA and the Ohio Acts.

*See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; and Art II., Section 34a of the Ohio Constitution.

83.　Named Plaintiff is a member of the Ohio Class and his claims for unpaid wages are typical of the claims of other members of the Ohio Class.

84.　Named Plaintiff will fairly and adequately represent the Ohio Class and the interests of all members of the Ohio Class.

85.　Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the Ohio Class that she has undertaken to represent.

86.　Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Class. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Class in this case.

87.　Questions of law and fact are common to the Ohio Class and predominate over any questions affecting only individual members. The questions of law and fact common to the Ohio Class arising from Defendant's conduct include, without limitation:

(a)　whether Defendant violated the Ohio Acts by failing to pay the Ohio Class Members for all overtime wages earned because of the violation(s) described herein;

(b)　what amount of unpaid and/or withheld compensation, including overtime compensation, is due to Named Plaintiff and other members of the Ohio Classes on account of Defendant's violations of the Ohio Acts;

(c)　whether the unpaid and/or withheld compensation remained unpaid in violation of the Ohio Acts; and

(d)　what amount of prejudgment interest, liquidated damages, and/or other monetary relief afforded by the Ohio Acts is due to Named Plaintiff and other members of the Ohio Classes on the overtime or other entitled compensation which was withheld or not paid to them.

88.     Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to their hourly, non-exempt employees comprising of the Ohio Class.

89.     Class certification is appropriate under Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Ohio Class, making appropriate declaratory and injunctive relief with respect to Named Plaintiff and the Ohio Classes as a whole.

90.     Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the Ohio Classes predominate over questions affecting individual members of the Ohio Classes and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

91.     A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court.

92.     Named Plaintiff and counsel are not aware of any interfering pending Ohio litigation on behalf of the Ohio Class as defined herein. Because the damages sustained by individual members may be modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## IV.     CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 - FLSA COLLECTIVE ACTION
### FOR UNPAID OVERTIME COMPENSATION)

93.     Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

94.     This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and other members of the FLSA Collective against Defendant, individuals who may join this case pursuant to 29 U.S.C. § 216(b).

95.     The FLSA requires that non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

96.     During the three (3) years preceding the filing of this Complaint, Defendant employed Named Plaintiff and the FLSA Collective Members.

97.     Named Plaintiff and the FLSA Collective Members were paid on an hourly basis and worked in non-exempt positions.

98.     During the three (3) years preceding the filing of this Complaint, Named Plaintiff and the FLSA Collective Members worked in excess of forty (40) hours in one or more workweek(s), but were not paid for all overtime hours worked as a result of one or more of Defendant's (1) Pay-to-Shift Policy; (2) Unpaid Meal Break Policy; and/or (3) Additional Remuneration Policy as alleged above.

99.     Defendant violated the FLSA with respect to Named Plaintiff and the FLSA Collective Members by failing to pay overtime for certain hours worked over forty (40) hours in a workweek at one-and-one-half times (1.5x) their regular rates of pay because of Defendant's companywide policy and/or practice described herein.

100.    Named Plaintiff and the FLSA Collective Members were not exempt from receiving FLSA overtime benefits.

101.     Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective Members are entitled.

102.     The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiff and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

103.     Defendant's failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Named Plaintiff and other similarly situated employees also violates the FLSA. *See* 29 C.F.R § 516.2(a)(7).

104.     Defendant knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and other members of the FLSA Collectives overtime compensation. Defendant's deliberate failure to pay overtime compensation to Named Plaintiff and the FLSA Collective Members was neither reasonable, nor was the decision not to pay overtime compensation made in good faith. By engaging in these practices, Defendant willfully violated the FLSA and regulations thereunder that have the force of law.

105.     As a result of Defendant's violations of the FLSA, Named Plaintiff and the FLSA Collective Members were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Named Plaintiff and other members of the FLSA Collective Members to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

<u>**COUNT II**</u>
**(O.R.C. § 4111.03 – RULE 23 CLASS ACTION**
**FOR UNPAID OVERTIME COMPENSATION)**

106. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

107. This claim is brought under the Ohio Wage Act.

108. Named Plaintiff and other Ohio Class Members have been employed by Defendant, and Defendant is an employer covered by the overtime requirements under the Ohio Wage Act.

109. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" (1.5x) the employee's regular rate of pay for all hours worked over forty (40) in one workweek "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1) (stating same).

110. While employed by Defendant, Named Plaintiff and other Ohio Class Members worked in excess of the maximum weekly hours permitted under Section 4111.03, but were not fully paid overtime wages as outlined above.

111. As a result of Defendant's company-wide corporate policies and/or practices as described herein, Defendant failed to pay Named Plaintiff and other Ohio Class Members all overtime wages earned.

112. Named Plaintiff and other Ohio Class Members were not exempt from the wage protections of the Ohio Wage Act.

113. Defendant's repeated, knowing failure to pay overtime wages to Named Plaintiff and other Ohio Class Members were violations of the Ohio Wage Act, and, as such, Defendant

willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and other Ohio Class Members are entitled.

114.    For Defendant's violations of the Ohio Wage Act, Named Plaintiff and other Ohio Class Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, interest, attorneys' fees, and all other remedies available on behalf of herself and all other Ohio Class Members.

**COUNT III**
**(O.R.C. § 4113.15 – RULE 23 CLASS ACTION**
**FOR OPPA VIOLATION)**

115.    Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

116.    The OPPA encompasses two claims. First, a violation of any other wage statute (including the FLSA or the Ohio Wage Act) triggers a failure to timely pay wages under the OPPA.

117.    Second, the OPPA allows an employee to sue to recover liquidated damages if the wages due are not in dispute.

118.    Named Plaintiff and other Ohio Class Members have been employed by Defendant.

119.    At all times relevant, Defendant was an entity covered by the OPPA, and Named Plaintiff and other Ohio Class Members have been employed by Defendant within the meaning of the OPPA.

120.    The OPPA requires Defendant to pay Named Plaintiff and other Ohio Class Members all wages, including unpaid overtime compensation, on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof *and* on or before the fifteenth day of each month for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

121.    At all times relevant, Named Plaintiff and other Ohio Class Members were not paid all wages, including overtime wages at one-and-one-half times their regular rates of pay within thirty (30) days of performing the work as outlined above. *See* O.R.C. § 4113.15(B).

122.    As a result, Named Plaintiff's and other Ohio Class Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

123.    Defendant's violations of the OPPA, O.R.C. § 4113.15, injured Named Plaintiff and other Ohio Class Members of the FLSA Collectives in that they did not receive wages due to them in a timely fashion as required by Ohio Law.

124.    In violating the OPPA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

125.    As a result of Defendant's violation of the OPPA, Plaintiff and other members of the FLSA Collective and Ohio Class Members are entitled to unpaid wages and liquidated damages pursuant to O.R.C. § 4113.15.

## V.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A.    Certifying the proposed FLSA collective action;

B.    Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collectives apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

C.    Certifying the proposed Ohio Class under the Ohio Acts;

D.    Finding that Defendant have failed to keep accurate records and that Named Plaintiff and other members of the FLSA Collective and Ohio Class Members are entitled to prove their hours worked with reasonable estimates;

E.    Finding that Defendant's wage and hour policies and/or practices as alleged herein violate the FLSA;

F.      Entering judgment against Defendant for damages for all unpaid overtime compensation owed to Named Plaintiff and other members of the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

G.      Entering judgment against Defendant for liquidated damages pursuant to the FLSA in an amount equal to all unpaid overtime compensation owed to Named Plaintiff and other members of the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

H.      Awarding to Named Plaintiff and other members of the FLSA Collective and Ohio Class Members unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the Ohio Acts, including but not limited to the OPPA, including but not limited to in an amount equal to six per cent of the amount of the unpaid wages still unpaid or two hundred dollars per Ohio Class member, whichever is greater;

I.      Awarding Named Plaintiff and other members of the FLSA Collective and Ohio Class prejudgment interest, post-judgment interest, and an award of damages representing Defendant's employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

J.      Awarding to Named Plaintiff a service award for her efforts in remedying various pay policies/practices as outlined above;

K.      Awarding to Named Plaintiff and other members of the FLSA Collective and Ohio Class costs and disbursements and reasonable allowances for fees of counsel and experts and reimbursement of expenses;

L.      Directing Defendant to pay reasonable attorneys' fees and all costs connected with this action;

M.      Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

N.      Declaring judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

O.      Awarding such other and further relief as to this Court may deem necessary, just, or proper.

Respectfully submitted,

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiff and Other Members*
*of the FLSA Collective and Ohio Class*

## JURY DEMAND

Named Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Daniel I. Bryant*
Daniel I. Bryant